**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**KEVIN HUDSON, an individual,**

        Plaintiff,

vs.                               Case No.: 6:04-cv-892-ORL-31-JGG

**INTERNATIONAL COMPUTER
NEGOTIATIONS, INC., a Florida
corporation,**

        Defendant.
_____/

**MEMORANDUM OF CRAIG L. BERMAN IN OPPOSITION
TO DEFENDANT'S CLAIM FOR ATTORNEY'S FEES
PURSUANT TO 28 U.S.C. § 1927**

The undersigned, CRAIG L. BERMAN ("Berman"), hereby responds in opposition to Defendant ICN's claim for appellate attorney's fees pursuant to 28 U.S.C. § 1927 ("Section 1927"). Defendant's motion should be denied for several reasons.

**I.    DISTRICT COURTS CANNOT DETERMINE ENTITLEMENT TO SECTION 1927 SANCTIONS FOR APPELLATE PROCEEDINGS**

Section 1927 is a penal statute and provides:

> Any attorney or other person admitted to conduct cases <u>in any court</u> of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required <u>by the court</u> to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. (Emphasis added).

The plain language of this statute directs a district court not to award fees for conduct before another court. Only the court in which "such conduct" occurred can order sanctions. As a penal statute, any ambiguity should be resolved against the exercise of power under

-1-

section 1927. See Peterson v. BMT Refractories, 124 F.3d 1386 (11th Cir. 1997).

As a general rule, the determination of section 1927 sanctions against counsel for conduct during an appeal is reserved to the appellate court, although it may allow the trial court to fix amount of fees and costs. See Morris v. Peterson, 871 F.2d 948, 951 (10th Cir. 1989); Flip Side Prods. v. Jam Prods., 843 F.2d 1024 (7th Cir. 1988); Webster v. Sowders, 846 F.2d 1032 (6th Cir. 1988); GRiD Sys. Corp. v. John Fluke Mfg. Co., 41 F.3d 1318 (9th Cir. 1994); In re Case, 937 F.2d 1014, 1023 (5th Cir. 1991) ("The language of § 1927 limits the court's sanction power to attorney's actions which multiply the proceedings in the case before the court. Section 1927 does not reach conduct that cannot be construed as part of the proceedings before the court issuing § 1927 sanctions").

The district court in Murphy v. Hous. Auth. & Urban Redevelopment Agency, 158 F. Supp. 2d 438, 451 n.3 (D.N.J. 2001), noted a limitation on its power under section 1927, stating:

> I note that Defendants also requested counsel fees and associated costs for expenses incurred in their successful defense of this Court's holding on Plaintiffs' appeal to the United States Court of Appeals for the Third Circuit. See Defs.' Second Suppl. App. for Counsel fees and Assoc. Expenses at 3-6 (February 13, 2001). <u>Whether such fees should be assessed against Mr. Van Syoc is an issue which must be decided by the Court that heard the appeal</u>, in this case, the United States Court Of Appeals for the Third Circuit.

Id. at 451 n.3 (emphasis added).

"[C]onduct in other fora cannot form the basis for an award of [section 1927] sanctions by this Court. Other courts have held that sanctions only reach conduct that occurred in the district court in which the motion for sanctions was filed." United States Horticultural Supply, Inc. v. Scotts Co., 2006 U.S. Dist. LEXIS 36693 (E. D. Pa. 2006).

Indeed, Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990), held that Rule 11 of the Federal Rules of Civil Procedure "does not authorize a district court to award attorney's fees incurred on appeal." Id. at 409.  By implication, 11th Cir. R. 39-2(a) also contemplates that a motion for sanctions for a frivolous appeal cannot be transferred to a district court. While not directly addressing section 1927 sanctions, 11th Cir. R. 39-2(a), which defines attorney's fees potentially subject to transfer, excludes "damages and costs sought pursuant to FRAP 38, costs taxed pursuant to FRAP 39, and sanctions sought pursuant to 11th Cir. R. 27-4."

ICN apparently has sought a transfer from the 11th circuit in an attempt to revive a time-barred claim under section 1927 because it did not file a motion for sanctions against the undersigned in the 11th Circuit. See 11th Cir. R. 38-1. Section 1927 is not a "catch all" provision for sanctioning counsel. NAACP v. Fla. Dept of Corrections, 2002 U.S. Dist. Lexis 27837 (M.D. Fla. 2002).   Rule 38 permits sanctions against attorneys for taking a frivolous appeal on behalf of their client. Braley v. Campbell, 832 F.2d 1504, 1511 (10th Cir. 1987). "Various courts have referred to and utilized F.R.A.P. 38 and 28 U.S.C. § 1912 interchangeably." Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 78 F.R.D. 192, 195 (E. D. La. 1978). Both provisions contemplate the allowance of attorneys' fees as damages. Id. at 194.

The federal "courts of appeals have section 1927 authority." Reynolds v. Roberts, 207 F.3d 1288, 1302 (11th Cir. 2000).  ICN filed a motion with the Eleventh Circuit Court of Appeals seeking to transfer consideration of entitlement to appellate attorney's fees to this Court pursuant to 11th Cir. R. 39-2(d). ICN sought a transfer on grounds of judicial economy and represented that it "plans to seek an award of attorney's fees for the appeal

on the same statutory grounds in which it will renew its motion with the District Court upon remand." (Emphasis added). ICN's stated rationale of judicial economy is at best a pretext to engage in forum shopping. Contrary to its representation to the 11th Circuit, ICN is seeking appellate fees from the undersigned for the first time on a different ground. ICN's studied attempt to bypass the 11th circuit utilizing a phony rationale raises interesting questions. See Cordoba v. Dillards, Inc., 419 F.3d 1169, 1188 (11th Cir. 2005) ("we think it is fair to ask in hindsight why Dillards did not seek to bring this to the court's attention at an earlier point in time"); Cummings v. United States, 648 F.2d 289, 293 (5th Cir. 1981) (forum shopping "requires courts to squander public resources in adjudicating the propriety of manipulative efforts to gain access to the forum considered most hospitable to the litigants' interests").

To avoid chilling lawyers from taking appeals following a grant of summary judgment, a trial court should not decide whether an appeal of its own summary judgment order is sanctionable. See White v. General Motors Corp., 908 F.2d 669, 675 (10th Cir. 1990) ("We decline to hold that an appeal is frivolous per se if the presentation of the issues in district court was bad enough to be sanctionable. Such a draconian rule would make sanctions available in nearly every appeal of a case dismissed for failure to state a claim, unless the appellant is successful. This would constitute too great a chill of advocacy."). "A key purpose of appellate review is to give a litigant recourse to another judicial authority in the event of error or bias by the trial judge. Where a party abuses that right by filing vexatious and baseless appeals, the proper recourse for the adversary is to seek relief from the appellate court -- a course appellants appear not to have pursued." In re Emergency Beacon Corp., 790 F.2d 285, 288 (2d Cir. 1986). "Appellate courts have

more than ample authority to sanction both parties and their attorneys for frivolous appeals, see e.g., Fed.R.Civ.P. 11, Fed.R.App.P. 38. Should an appellate court want to make use of the trial court's extensive knowledge of the events that transpired before review was sought, it can always impose the sanction of fees but allow the trial court to fix the amount in the first instance." Id. Accordingly, ICN is unable to seek section 1927 sanctions for appellate proceedings in a district court.

## II. HUDSON'S APPEAL DID NOT MULTIPLY THE PROCEEDINGS, NOR IN A MANNER PROHIBITED BY SECTION 1927.

A proceeding is multiplied impermissibly by delay. No delay has been alleged or established by the record. If anything, ICN attempted to delay the appeal by seeking imposition of a bond for appellate attorney's fees without citing and dealing with adverse precedent: Young v. New Process Steel, LP, 419 F.3d 1201, 1207-08 (11th Cir. 2005). This Court did not impose a bond. Nor did it award fees against Hudson or his counsel.

Before a sanction under § 1927 is appropriate, an attorney's alleged multiplication of the proceedings must be both "unreasonable" and "vexatious." Costs and damages may be imposed under § 1927 only to sanction "needless delay." Reid v. United States, 715 F.2d 1148, 1154 (7th Cir. 1983). "By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys through the entire litigation to avoid dilatory tactics." United States v. International Broth. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991). The purpose of the statute is "to deter unnecessary delays in litigation." Id. (quoting H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8, reprinted in 1980 U.S. Code Cong. & Admin. News 2716, 2782). Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent

to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes." Roadway Express v. Piper, 447 U.S. 752, 762, 100 S. Ct. 2455 (1980).

    Hudson filed a notice of appeal and raised two issues on appeal:

> 1.    Whether the District Court erred in entering summary judgment against Hudson on his disparate treatment claim under the Florida Civil Rights Act where he demonstrated evidence from which a jury could conclude he was actually or perceived as disabled.
>
> 2.    Whether the District Court erred in entering summary judgment against Hudson on his retaliation claim under section 510 of ERISA where a jury could infer that the decision-maker had knowledge of Hudson's protected activity based on material conflicts between the testimony of ICN's interested witnesses.

The court of appeals affirmed this Court. However, "a frivolous appeal means something more than an unsuccessful appeal." Reid v. United States, 715 F.2d 1148, 1154 (7th Cir. 1983). "Simply pursuing a weak claim does not warrant sanctions under § 1927." Hackman v. Valley Fair, 932 F.2d 239, 243 (3d Cir. 1991). "Imposition of attorney's fees and costs under section 1927 is reserved for behavior of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 795 (3d Cir. 1999) (internal quotations omitted). "The standard for bad faith -- and for conduct tantamount to bad faith under § 1927 -- is higher than the standard for mere frivolousness." Boler v. Space Gateway Support Co. LLC, 290 F. Supp. 2d 1272, 1285 (M.D. Fla. 2003) (report and recommendation). Section 1927 was designed to punish those who willfully abuse the judicial process by conduct tantamount to bad faith. Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991).

Defendant ICN seeks section 1927 sanctions for the appeal even though it studiously avoided seeking such sanctions from the 11th circuit. Defendant ICN's failure to seek sanctions before the 11th circuit should be viewed as consciousness of its lack of entitlement to fees.

ICN moved to require Hudson to pose a bond for appellate attorney's fees and said motion was denied, not granted, consistent with an absence of frivolity. See Young v. New Process Steel, LP, 419 F.3d 1201, 1207-08 (11th Cir. 2005) ("we hold that a district court may not require an unsuccessful plaintiff in a civil rights case to post an appellate bond that includes not only ordinary costs but also the defendant's anticipated attorney's fees on appeal, unless the court determines that the appeal is likely to be frivolous, unreasonable, or without foundation. If the court does make that determination, it has discretion to grant the defendant's motion and require the plaintiff to post a bond in the amount of the defendant's anticipated costs including appellate attorney's fees").

That no bond was imposed – while not conclusive because of the permissive nature of Fed. R. App. P. 7 – certainly undermines ICN's section 1927 claim. Had a bond for fees been imposed, Hudson would have viewed that as a warning. See Freese v. Wuesthoff Health Sys., 2006 U.S. Dist. LEXIS 31784 (M.D. Fla. 2006) (where attempts to state a claim "border on frivolous," this "Court reminds counsel that the limits set by Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 are real, as are the consequences for violating them"). Normally, a "district judge should not await the aggregation of what he considers multiple acts of misconduct and then levy an aggregated sanction without at least warning the attorneys at the time of each act or reserving decision upon timely requests by opposing counsel. Discrete acts of vexatious conduct should be identified and a

determination made whether they were done in bad faith or, even if bad faith was not present, whether they multiplied the proceedings." In re Ruben, 825 F.2d 977, 990 (6th Cir. 1987); see also In re Yagman, 796 F.2d 1165, 1182 (9th Cir. 1986) ("In contexts other than Rule 11, the sanctionable misconduct will, in general, be more immediately recognizable. Consequently, if the purposes of the rules are to be served, the sanctionable behavior should be brought to the immediate attention of the offending attorney. In the event of discovery abuses and other vexatious pre-trial behavior, for example, sanctions should be levied contemporaneously with the offending misconduct. The benefit provided by the policy of deterrence is lost if the court postpones imposition until the end of the case").

"Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case." McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001); Jerelds v. City of Orlando, 194 F. Supp. 2d 1305 (M.D. Fla. 2002).  To be liable under section 1927, counsel must have engaged in a "serious and studied disregard for the orderly process of justice." Overnite Transportation Co. v. Chicago Industrial Tire Co., 697 F.2d 789, 795 (7th Cir. 1983). ICN's effort to allege "something more" should be rejected.  Here, ICN "contends counsel would have recognized an absence of proof to support plaintiffs' claims, but this is not uncommon in a Title VII case. It is not reasonable to conclude that a guilty employer will concede during pretrial discovery that it has violated the law. Those who in fact discriminate do not typically document a violation." Tutton v. Garland Indep. School Dist., 733 F. Supp. 1113, 1119 (N.D. Tex. 1990).

ICN asserts this Court must award sanctions against the undersigned because Plaintiff allegedly committed perjury and filed "*a misleading declaration*" (Doc. 115-1, p. 7). But in "determining whether a claim was or became frivolous, we view the evidence in the

light most favorable to the non-prevailing plaintiff." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1179 (11th Cir. 2005).  A jury is permitted to accept some testimony and reject the remainder. See EEOC v. Massey Yardley Chrysler Plymouth, 117 F.3d 1244, 1250 (11th Cir. 1997) (the jury "could accept parts of a witness's testimony and reject other parts of it"). On appeal of a summary judgment, the evidence and all reasonable factual inferences must be viewed in favor of the non-moving party. Hulsey v. Pride Rests., LLC, 367 F.3d 1238 (11th Cir. 2004).

The evidentiary conflicts between Dan Wallace and Plaintiff – about whose disability insurance benefits were under discussion – must be resolved in favor of Plaintiff. Moreover, the remaining conflict between Wallace and Rosenblum about Wallace's source of knowledge before approaching Plaintiff about Plaintiff's disability insurance inquiry forecloses any sanctions under section 1927.[1]  ICN ignores Reeves in its motion (ICN Memorandum, p. 10).[2] Wallace admits that he had a conversation with Hudson on November 5, 2002 about disability insurance (Wallace 83). Wallace admitted that he "may" have learned about Hudson's inquiry directly from Ms. Rosenblum (Wallace 83).  Wallace's admission impeaches Ms. Rosenblum who stated that she did not inform Wallace or Auer

---

[1] The finder of fact has the right to disregard even uncontradicted testimony. See Negron v. City of Miami Beach, 113 F.3d 1563, 1570 (11th Cir. 1997) (citing, Gregg v. U.S. Industries, Inc., 887 F.2d 1462, 1469-70 (11th Cir. 1989)). "It is the prerogative of a jury or other trier of fact to disbelieve uncontradicted testimony unless other evidence shows that the testimony must be true." EEOC v. G-K-G, Inc., 39 F.3d 740, 746 (7th Cir. 1994). "A proper inference the jury can make from disbelieved testimony is that the opposite of the testimony is true." United States v. Mejia, 82 F.3d 1032, 1038 (11th Cir. 1996).

[2] On a Rule 56 motion, the reviewing court must "disregard all evidence favorable to the moving party that the jury is not required to believe" and any evidence offered by the moving party's interested witnesses even if it is "uncontradicted and unimpeached." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151, 120 S.Ct. 2097 (2000).

of her conversation with Hudson (R. 55-3, ¶ 6). Wallace admitted that Auer would want to know if a member of the ICN executive committee might be out on disability leave (Wallace 85).

ICN contumaciously accuses Hudson of "ignor[ing] the **Eleventh Circuit's body of binding precedent** concerning depression claims under the ADA" (Memorandum, p. 10; see also p. 17) (bolding added).[3] Hudson did not allege any ADA claim. Through sheer incompetence or malevolence, ICN boldly but frivolously asserts that the undersigned was trying to "mislead the Eleventh Circuit" by citing cases "from other Federal appellate courts and district courts in other jurisdictions" (ICN Memorandum, p. 10).

Florida courts supply all binding precedent for claims under the FCRA and are not bound by 11th circuit precedent. See Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 691 (11th Cir. 1983). There is no controlling Florida case as to whether major depression accompanied by suicidal ideation may be a handicap or perceived handicap. See Peters v. Baldwin Union Free School Dist., 320 F.3d 164, 168 (2d Cir. 2003) (holding that "[a] mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself and concluding that it "therefore constitutes a protected disability" under the Rehabilitation Act). Sanctions are clearly not warranted. See United States v. Alexander, 981 F.2d 250, 253 (5th Cir. 1993) (vacating an assessment of

---

[3]In its memorandum, ICN's "[c]ounsel [has] found ways to ostensibly conform record references to support Defendant's case by misreading context, omitting critical facts, and sometimes by simply stating the opposite of what was in the record. This kind of disinformation is insidious because it was provided by an officer of the court. It created a greater burden on plaintiff and the court. Defendant's counsel treated the law with the same contempt for accuracy." Moser v. Bret Harte Union High Sch. Dist., 366 F. Supp. 2d 944, 976 (E.D. Cal. 2005).

sanctions because of "the absence of authority in this Circuit combined with the complexity of the issue"); Cordoba v. Dillard's, Inc., 419 F.3d 1169 (11th Cir. 2005) (conflicting pronouncements of law precluded finding of frivolity).[4] The motion for section 1927 sanctions should be denied.

### III. THE APPEAL OF THE FCRA CLAIM DID NOT MULTIPLY THE PROCEEDINGS; NOR WAS IT UNREASONABLE AND VEXATIOUS

Hudson contended in opposition to the motion for summary judgment and on appeal that his major depression substantially limited major life activities other than working. The order granting summary judgment only addressed working, stating:

> Hudson has offered no evidence to demonstrate that the depression from which he suffers substantially limits a major life activity, in particular, his ability to work, nor has Hudson established either a record of impairment or that he was regarded as being impaired. Indeed, the evidence is to the contrary, in that both prior to and after his termination, he engaged in a job search, and started his own company after his termination. (Doc. 49 at 6; Doc. 52, Att. 2, Ex. G at 120). Accordingly, Hudson has failed to support his claim under FCRA, and ICN is entitled to summary judgment on Count Two.

Hudson v. Int'l Computer Negotiations, Inc., 2005 U.S. Dist. LEXIS 30022 (M.D. Fla. 2005) (footnotes omitted). Footnote 24 states:

> There is conflicting testimony regarding his state of depression. There is evidence that Hudson was not clinically depressed at the time of his termination. (See Doc. 53, Att. 2, Ex. I at 126).

---

[4]The FCRA prohibits discrimination based on a "handicap" or perceived handicap. For example, in Ross v. Jim Adams Ford, Inc., 871 So. 2d 312 (Fla. 2nd DCA 2004), the court found a close question whether a broken leg was an actual or perceived handicap. The court found: "Although Mr. Ross's leg fracture eventually healed and thus would not appear to qualify as a disability, it is arguable that a question of fact remains as to whether Jim Adams Ford terminated Mr. Ross at a time when it believed the fracture was or would result in a permanent disability." Id. at 314.

> However, there is also evidence that he was suffering from "major depression" prior to his termination. (Doc. 65, Att. 5 at 16-17; but see id. at 31 (noting that Hudson's termination caused him to begin suffering from "full-blown symptomatic major depression")). Even so, there is no evidence that the fact that he suffered from major depression substantially limited his ability to work. It appears that, at present, Hudson is able to fully function in life. (Doc. 53, Att. 2, Ex. I at 122).

(Emphasis added).  Footnote 25 addresses the perceived disability claim, stating:

> To base a claim on "being regarded as having an impairment," a plaintiff must show: (1) that the impairment is "substantially limiting and significant;" (2) that his employer viewed the impairment as "generally foreclosing the type of employment involved, not just a narrow range of job tasks;" and (3) more than mere knowledge on the part of his employer that he suffered from a certain condition. . . .Hudson has not only failed to establish that he has a disability, he failed to establish that Auer was aware of a record of substantial impairment or that Auer believed Hudson's depression foreclosed him from performing his job.

Id. (citation omitted).  This Court thereby relied on Todd v. McCahan, 158 F. Supp. 2d 1369, 1379 (N.D. Ga. 2000), which addressed a claim that an employee was solely perceived as disabled in the major life activity of working.

Depression can give rise to an actual disability even within the 11th circuit. See Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322 (11th Cir. 1999) ("Nationwide was fully aware from 1991 onwards that Farley suffered from several long-term disabilities including depression, alcoholism, and a stress disorder later diagnosed as post-traumatic stress disorder").

Major life activities include sleeping, engaging in sexual relations, interacting with others, thinking, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. McAlindin v. County of San Diego, 192 F.3d

1226 (9th Cir. 1999), amended by, 201 F.3d 1211 (9th Cir.), cert. denied, 530 U.S. 1243 (2000); Head v. Glacier Northwest, Inc., 413 F.3d 1053 (9th Cir. 2005).  Hudson alleged impairment of major life activities other than work.

The record shows that Auer was admittedly concerned that Hudson was missing work for depression-induced doctor appointments. Indeed, the timing of the discharge could be viewed as the ultimate expression that Hudson was unable to care for himself and work.

Hudson maintains it was proper to seek a ruling on the scope of the "regarded as" definition of disability.  See e.g., Holihan v. Lucky Stores, 87 F.3d 362, 366 (9th Cir. 1996) (Lucky called Holihan into two separate meetings to discuss his aberrational behavior. At one of these meetings, Lucky District Manager Church asked Holihan if he was having any "problems;" at the other, Church strongly encouraged Holihan to seek counseling through Lucky's EAP. Lucky also received several doctors' reports diagnosing Holihan with depression, anxiety and stress, including the reports of Drs. Strickler and Cramer. From these facts, a reasonable jury could infer that Lucky regarded Holihan as suffering from a disabling mental condition that substantially limited his ability to work").

### IV.   THE APPEAL OF THE ERISA CLAIM DID NOT MULTIPLY THE PROCEEDINGS; NOR WAS IT UNREASONABLE AND VEXATIOUS

The ERISA claim was dismissed because the record did not permit a reasonable inference that Auer had knowledge of Hudson's conversations with Ms. Rosenblum or Dan Wallace before he dismissed Hudson. The appeal argued that an inference of knowledge on the part of Auer was reasonable, in part, because Wallace's admission on page 83 of his deposition contradicted Ms. Rosenblem's testimony that she maintained the secrecy of her November 4, 2002 conversation with Hudson.

"A proper inference the jury can make from disbelieved testimony is that the **opposite** of the testimony is true." United States v. Mejia, 82 F.3d 1032, 1038 (11th Cir. 1996) (bolding added). The demeanor of a witness "may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies." NLRB v. Walton Mfg. Co., 369 U.S. 404, 408 (1962) (quoting, Dyer v. MacDougall, 201 F.2d 265, 269 (2nd Cir. 1952)). Judgment as a matter of law is usually improper "when resolution of the dispositive issue requires a determination of state of mind." Croley v. Matson Navigation Co., 434 F.2d 73, 77 (5th Cir. 1970). Motive and intent are "fact-intensive issues [and] should be decided by a jury, which is in the position to observe the demeanor of witnesses and make appropriate credibility determinations." SEC v. Adler, 137 F.3d 1325, 1342 (11th Cir. 1998).[5]

"Inferences from circumstantial facts may frequently amount to 'full proof' of a given theory, and may on occasion **even be strong enough to overcome the effect of direct testimony** to the contrary." Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994) (bolding added; quoting, Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1164 (10th Cir. 1977) (construing Title VII)); see also The Wenona, 86 U.S. 41, 58 (1873).

Knowledge on the part of Auer is arguable because of several factors: (1) Hudson

---

[5]Where, as here, the only evidence offered in support of the employer's explanation for discharge is disputed oral testimony, a jury could disbelieve it. See Carter v. Duncan-Huggins, Ltd., 727 F.2d 1225, 1234 (D.C. Cir. 1984).

was fired shortly after his conversations with Ms. Rosenblum and Wallace; (2) Wallace contradicts Ms. Rosenblum; (3) the reasons for discharge are pretextual; (4) Auer admitted he had expressed concerns about Hudson missing work based on doctor visits for depression; and (5) the purpose of the November 4 conversation was to make Rosenblum aware of Hudson's possible need for disability leave and benefits associated with such leave.

"A determination of what a particular person knew, appreciated or understood is peculiarly within the province of the jury." Wyly v. Burlington Industries, Inc., 452 F.2d 807, 809-10 (5th Cir. 1971). An inference is "[a] process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." *Black's Law Dictionary* 778 (6th ed. 1990). "An inference is not unreasonable simply because it is based in part on conjecture, for an inference by definition is at least partially conjectural." Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1326 (11th Cir. 1982) ("Unavoidably, in deciding how much the jury can speculate . . . the line of demarcation which we are required to walk is ephemeral"). "Inference is capable of bridging many gaps." Galloway v. United States, 319 U.S. 372, 386 (1943).

Wallace admits that he had a conversation with Hudson on November 5, 2002 about disability insurance (Wallace 83). Wallace admits that he "may" have learned about the issue from Ms. Rosenblum (Wallace 83). Ms. Rosenblum states that she did not inform Wallace or Auer of her conversation with Hudson (R. 55-3, ¶ 6). Wallace admitted that Auer would want to know if a member of the ICN executive committee might be out on disability leave (Wallace 85).

Wallace's "may have" admission is important. In <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155 (11th Cir.1993), an employee sought to prove that she had been transferred by the mayor in retaliation for engaging in conduct protected under Title VII. The mayor denied at trial being aware of her protected activity, but was impeached by his deposition testimony stating that he "**may**" have discussed Goldsmith's complaints during their meeting. <u>Id</u>. at 1163 & n. 12. Those facts were sufficient for a jury to find that the mayor was aware of the employee's protected activity. The jury is "at liberty to disregard the testimony of a witness on the ground that he is an employee of the defendant in the [presence] of conflicting proof or of circumstances justifying countervailing inferences or suggesting doubt as to the truth of his statement" or where "the evidence be of such a nature as fairly to be open to challenge as suspicious or inherently improbable." <u>Chesapeake & O. Ry. Co. v. Martin</u>, 283 U.S. 209, 214 (1931). Sanctions are not warranted.

**V.     CONCLUSION**

Sanctions under section 1927 are not warranted against the undersigned. "The plaintiff's appeal, although not meritorious, is plainly not frivolous; it is the defendant's request for [section 1927] sanctions that is frivolous." <u>Meeks v. Jewel Cos.</u>, 845 F.2d 1421, 1422 (7th Cir. 1988).

WHEREFORE, Defendant's Motion for Attorney's Fees under section 1927 should be denied.

                                          Respectfully submitted,

                                          /s/ Craig L. Berman
                                          Craig L. Berman, Esq.
                                          BERMAN LAW FIRM, P.A.

>111 Second Avenue, N.E., Suite 706
>St. Petersburg, FL 33701
>Phone: (727) 550-8989
>Fax: (727) 894-6251
>Fla. Bar No. 068977
>**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 27, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to: G. Steven Fender.

>/s/ Craig L. Berman
>Attorney