**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**KEVIN HUDSON, an individual,**

        **Plaintiff,**

**vs.**                              **Case No.: 6:04-cv-892-ORL-31-JGG**

**INTERNATIONAL COMPUTER**
**NEGOTIATIONS, INC., a  Florida**
**corporation,**

        **Defendant.**

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S RENEWED MOTION FOR ATTORNEY'S FEES**

Plaintiff, KEVIN HUDSON, by and through his undersigned attorney, hereby responds in opposition to Defendant's renewed motion for attorney's fees.  The motion for attorney's fees should be denied.

**I.**    **STANDARD OF REVIEW**

The Supreme Court has held that "the fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Hughes v. Rowe, 449 U.S. 5, 14 (1980). A defendant is not entitled to an award of attorney's fees and costs simply because it prevailed in summary judgment. Boler v. Space Gateway Support Co. LLC, 290 F. Supp. 2d 1272 (M.D. Fla. 2003). The standard for awarding attorney's fees to a prevailing defendant is a stringent one. A case is frivolous if it is so lacking in arguable merit as to be groundless or without foundation.  Id. Courts applying the three factors have been reluctant to award fees unless the plaintiff refused to acknowledge clear precedent.

Id.  To avoid discouraging "all but the most airtight claims," the district court must evaluate whether the plaintiff's action was "frivolous, unreasonable, or without foundation" as of the time that the plaintiff filed suit, not with "hindsight logic" after judgment has been entered against him.  Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978).

Plaintiff suffered from major depression and was receiving aggressive treatment at the time of discharge. Auer was aware of the depression and the treatment.  Auer even cited Hudson's visits to his doctor as a contributing reason for discharge, along with several other pretexts. The record evidence, when viewed in a light most favorable to Hudson, precludes a fee award notwithstanding the conclusion in the order granting summary judgment:

> Hudson has utterly failed to support his claims under both ERISA and FCRA. Particularly given the circumstances of this case and the timing of this suit, it appears that this suit is little more than a retaliatory action by Hudson in response to ICN's suit regarding the non-compete agreement. Indeed, these circumstances, **combined with** Hudson's utter inability to support his claims make his claims appear little more than frivolous.

Hudson v. Int'l Computer Negotiations, Inc., 2005 U.S. Dist. LEXIS 30022 (M.D. Fla. 2005) (emphasis added).

The Court's conclusion rests on a combination of two factors; it appears neither of which was independently sufficient. The absence of either factor obviates the finding of an appearance of frivolity. See Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88 (3rd Cir. 1993) (where neither concurrent factor standing alone is sufficient to cause the injury, each factor is considered a but for cause of the action).  As shown below, the District Court relied on hindsight logic and post-hoc reasoning to reach its conclusion.

-2-

A.      _No Evidence of Vindictive Prosecution_

The first factor (timing of suit) is insufficient to support either the conclusion or a finding of frivolity.  Merely because this suit was filed <u>after</u> the state court suit was filed does not make this a "retaliatory action" (either in appearance, fact, or, most importantly, undisputed as a matter of law) and cannot contribute to any finding of frivolity. "The appearance of vindictiveness does not embody the *post hoc ergo propter hoc fallacy*." <u>United States v. Gallegos-Curiel</u>, 681 F.2d 1164, 1169 (9th Cir. 1982). The "link of vindictiveness cannot be inferred simply because [Hudson's] actions followed the exercise of a right, or because they would not have been taken but for exercise of a defense right." <u>Id</u>. Moreover, Hudson had a legitimate and non-retaliatory reason to prosecute this case in federal court. <u>See</u> <u>Harrison v. Palm Harbor MRI</u>, 703 So. 2d 1117 (Fla. Dist. Ct. App. 1997) (finding of discrimination or retaliation would be a relevant as a defense to an action seeking enforcement of a non-compete agreement).  Indeed, ERISA claims can only be brought in federal court.

Frivolity determinations cannot be based on a race to the courthouse. Temporal sequence cannot support a bald assertion of prosecutorial vindictiveness. <u>See</u> <u>United States v. Miller</u>, 948 F.2d 631, 634 (10th Cir. 1991) ("Finally, as a policy matter, we find a presumption of vindictiveness based on timing alone unsound as it could easily be abused. Adopting such a presumption would give sophisticated criminal suspects an opportunity to file civil charges against the government prior to an impending indictment, thus creating a presumption that the eventual charges were brought vindictively").  Moreover, why would Hudson desire to retaliate since Defendant ICN obtained no relief in the state court non-jury suit and was denied a temporary injunction? Defendant ICN cannot and did not prove

"actual vindictiveness."  Plaintiff would be entitled to a hearing as a matter of due process should this Court hold a belief that the federal suit was retaliatory.

### B. *Hudson Offered Evidence to Support his Claims*

In "determining whether a claim was or became frivolous, we view the evidence in the light most favorable to the non-prevailing plaintiff." Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1179 (11th Cir. 2005).  Neither can a finding of frivolity be based on "Hudson's utter inability to support his claims." Hudson v. Int'l Computer Negotiations, Inc., 2005 U.S. Dist. LEXIS 30022 (M.D. Fla. 2005). Findings of frivolity typically do not stand where there is some evidence to support a claim.  Sullivan v. School Board, 773 F.2d 1182, 1189 (11th Cir. 1985) ("In these cases, the plaintiffs did not introduce any evidence to support their claims") (emphasis added). "Factors considered important in determining whether a claim is frivolous also include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. . . [T]hey are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis." Id.

One of the Sullivan factors is whether or not the plaintiff made out a prima facie case.  But for purposes of determining frivolity, this first Sullivan factor has little if any relevance in a disability discrimination case where the plaintiff must prove a disability and the decision-maker's knowledge of said disability. In most disparate treatment cases, the burden of establishing a prima facie case of disparate treatment is not onerous," Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1980), because all races, religions, national origins, and genders are protected. But not all physical or mental

-4-

impairments are protected in ADA cases as actual disabilities.  And in other cases where the plaintiff is regarded as disabled, a non-impairment can render the plaintiff disabled if the employer relies on myth, fear, or stereotype. See D'Angelo v. Conagra Foods, 422 F.3d 122 (11th Cir. 2005). In such a case, anticipating the articulated reason proffered for the discharge and attempting to demonstrate pretext is a reasonable way to establish a prima facie case. See Ross v. Campbell Soup Co., 237 F.3d 701, 707 (6th Cir. 2001). Pretext is unquestionably relevant in a perceived disability case; the absence of a prima facie case in ADA cases should not be relevant because failing to demonstrate pretext does not expose a plaintiff to sanctions. See EEOC v. Reichhold Chems., Inc., 988 F.2d 1564, 1571 (11th Cir. 1993); Quintana v. Jenne, 414 F.3d 1306 (11th Cir. 2005); see also EEOC v. Pet, Inc.., 719 F.2d 383, 386 (11th Cir. 1983) (rejecting finding of frivolity where plaintiff attempted to prove prima facie case by showing pretext).

## II.    DEFENDANT IS NOT ENTITLED TO FEES FOR THE FCRA CLAIM BECAUSE PLAINTIFF'S EVIDENCE IMPLICATES MAJOR LIFE ACTIVITIES OTHER THAN WORKING

Under the EEOC guidelines, in assessing a mental disability, "[t]he first question is whether an individual is substantially limited in a major life activity other than working (e.g., sleeping, concentrating, caring for oneself)." McAlindin v. County of San Diego, 192 F.3d 1226, 1233 (9th Cir. 1999), amended by, 201 F.3d 1211 (9th Cir.), cert. denied, 530 U.S. 1243 (2000); (emphasis added; citing, Equal Employment Opportunity Commission, *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities* 3 (March 25, 1997)); Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3rd Cir. 1998) ("Under the EEOC's interpretive guidelines, determining whether an individual is substantially limited in one or more of the major life activities requires a two-step analysis.

First, the court determines whether the individual is substantially limited in any major life activity other than working, such as walking, seeing, or hearing. 29 C.F.R. Pt. 1630, App. §§ 1630.2(j).").

Hudson contended in opposition to the motion for summary judgment and on appeal that his major depression substantially limited major life activities other than working. Without explanation, the order granting summary judgment only addressed working, stating:

> Hudson has offered no evidence to demonstrate that the depression from which he suffers substantially limits a major life activity, in particular, <u>his ability to work</u>, nor has Hudson established either a record of impairment or that he was regarded as being impaired. Indeed, the evidence is to the contrary, in that both prior to and after his termination, he engaged in a job search, and started his own company after his termination. (Doc. 49 at 6; Doc. 52, Att. 2, Ex. G at 120). Accordingly, Hudson has failed to support his claim under FCRA, and ICN is entitled to summary judgment on Count Two.

<u>Hudson v. Int'l Computer Negotiations, Inc.</u>, 2005 U.S. Dist. LEXIS 30022 (M.D. Fla. 2005)

(footnotes omitted).  Footnote 24 states:

> There is conflicting testimony regarding his state of depression. There is evidence that Hudson was not clinically depressed at the time of his termination. (See Doc. 53, Att. 2, Ex. I at 126). However, <u>there is also evidence that he was suffering from "major depression" prior to his termination</u>. (Doc. 65, Att. 5 at 16-17; but see id. at 31 (noting that Hudson's termination caused him to begin suffering from "full-blown symptomatic major depression")). Even so, <u>there is no evidence that the fact that he suffered from major depression substantially limited his ability to work</u>. It appears that, at present, Hudson is able to fully function in life. (Doc. 53, Att. 2, Ex. I at 122).

(Emphasis added).  Footnote 25 addresses the perceived disability claim, stating:

> To base a claim on "being regarded as having an impairment,"

> a plaintiff must show: (1) that the impairment is "substantially limiting and significant;" (2) that his employer viewed the impairment as "generally foreclosing the type of employment involved, not just a narrow range of job tasks;" and (3) more than mere knowledge on the part of his employer that he suffered from a certain condition. . . .Hudson has not only failed to establish that he has a disability, <u>he failed to establish that Auer was aware of a record of substantial impairment or that Auer believed Hudson's depression foreclosed him from performing his job.</u>

<u>Id.</u> (citation omitted).  This Court thereby relied on <u>Todd v. McCahan</u>, 158 F. Supp. 2d 1369, 1379 (N.D. Ga. 2000), which addressed a claim that an employee was solely perceived as disabled in the major life activity of working.

ICN contumaciously accuses Hudson of "ignor[ing] the **Eleventh Circuit's body of binding precedent** concerning depression claims under the ADA" (Memorandum, p. 10; <u>see</u> <u>also</u> p. 17) (bolding added). Hudson did not allege any ADA claim.  Florida courts supply all binding precedent for claims under the FCRA and are not bound by 11th circuit precedent.  <u>See</u> <u>Silverberg v. Paine, Webber, Jackson & Curtis, Inc.</u>, 710 F.2d 678, 691 (11th Cir. 1983). There is no controlling <u>Florida</u> case as to whether major depression accompanied by suicidal ideation may be a handicap or perceived handicap.  <u>See</u> <u>Peters v. Baldwin Union Free School Dist.</u>, 320 F.3d 164, 168 (2d Cir. 2003) (holding that "[a] mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself and concluding that it "therefore constitutes a protected disability" under the Rehabilitation Act).  Depression can give rise to an actual disability even within the 11th circuit. <u>See</u> <u>Farley v. Nationwide Mut. Ins. Co.</u>, 197 F.3d 1322 (11th Cir. 1999) ("Nationwide was fully aware from 1991 onwards that Farley suffered from several long-term disabilities including depression, alcoholism, and a stress disorder later

diagnosed as post-traumatic stress disorder").

This Court found that Plaintiff was not disabled.  No Florida case put Plaintiff on notice that he was not disabled. ICN cites no cases where sanctions were imposed against an employee with an impairment who merely failed to show that the impairment substantially limited a major life activity. The case law treats the "substantially limits" inquiry as a question of fact for the jury. See D'Angelo v. Conagra Foods, 422 F.3d 122 (11th Cir. 2005). The Act defines disability "with respect to an individual," 42 U.S.C. § 12102(2), and in terms of the impact of an impairment on "such individual." Hudson did not ignore controlling case law.

A statement in a declaration can suffice to raise a genuine issue of material fact regarding the impairment of a major life activity.  Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1058 (9th Cir. 2005).  Hudson filed a Declaration which states:

> 3.    In 2002, I began to experience major depression, which was accompanied by a high level of anxiety, personal doubt, and a sense of hopelessness. These conditions substantially limited several major life activities, inter alia, including my interaction with others, ability to concentrate, emotional stability, sexual drive, and ability to sleep.  I began treatment for my depression and accompanying limitations in July 2002.
>
> 4.    My inability to sleep became substantially limited to the point where I had to take prescribed medication (Ambien) just to be able to function during the workday, and not fall asleep.
>
> 5.    In the fall of 2002 before my discharge, I began having suicidal thoughts because of my depression which often resulted in sudden crying spells, and one such occasion took place with Mr. Auer, after he was aware of my depression.
>
> 6.    On or about July 15, 2002, I began seeing a psychiatrist, Dr. Patricia Sarkar, as a result of my deteriorating emotional and physical condition.  Dr. Sarkar diagnosed me with major depression and anxiety and immediately prescribed me anti-depression medication, which included but was not limited to, Effexor, Celexa, Prozac, Zoloft, and Lexipro.  On or about that same time, I

began seeing a psychologist.

7.    On August 13, 2002, I was seen again by Dr. Sarkar.  She indicated that my functioning had not improved and proscribed me the anti-depression medication, Celexa.

8.    On or about September 6, 2002, Mr. Auer specifically asked me where I was going during my lunch hour.  At that time, I informed Mr. Auer that I was suffering from depression and was seeing a psychologist and psychiatrist.

9.    A few weeks later, on or about October 11, 2002, I was seen again by Dr. Sarkar.  I was having the following symptoms, uncontrollable crying, increased suicidal thoughts, and no sex drive.  Dr. Sarkar determined that my progress was "deteriorating" and that my response to the medications was "poor."  During this session, Dr. Sarkar proscribed me another anti-depression medication, Prozac.  On October 17, 2002, Dr. Sarkar increased my intake of Prozac due to my deteriorating condition which was continuing to substantially limit various life activities, including sleep and interaction with others.

10.   I visited Dr. Sarkar again on October 28, 2002, a few days after I had returned from the conference in New Orleans.  Dr. Sarkar determined that my progress was continuing to deteriorate and that my response to the medications remained poor.  <u>I was continuing to have problems sleeping and was continuing to suffer from no sexual drive.  Dr. Sarkar proscribed me the anti-depression medication, Lexipro.  During this visit, Dr. Sarkar informed me that if the Lexipro did not improve my condition, she believed that I was going to have to be admitted into the hospital and that I was to prepare myself for that possibility.</u>

(Hudson Declaration, ¶¶ 3-10).

This Declaration precludes a finding of frivolity. See <u>Criado v. IBM Corp.</u>, 145 F.3d 4 (1st Cir. 1998) (court upheld finding of depression as a disability). Hudson's Declaration implicates several major life activities: sleeping, engaging in sexual relations, interacting with others, thinking, caring for oneself, learning, and working. See <u>McAlindin v. County of San Diego</u>, 192 F.3d 1226 (9th Cir. 1999), <u>amended by</u>, 201 F.3d 1211 (9th Cir.), <u>cert. denied</u>, 530 U.S. 1243 (2000); <u>Head v. Glacier Northwest, Inc.</u>, 413 F.3d 1053 (9th Cir. 2005) ("To demonstrate a substantial impairment in the ability to interact with others, Head

"must show that his 'relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary"). Hudson should not be exposed to sanctions where major life activities other than working were not addressed at summary judgment or on appeal.

The record shows that Auer was admittedly concerned that Hudson was missing work for depression-induced doctor appointments. Indeed, the timing of the discharge could be viewed as the ultimate expression that Hudson was unable to care for himself and work. Hudson maintains it was proper to base a claim on the "regarded as" definition of disability. See e.g., Holihan v. Lucky Stores, 87 F.3d 362, 366 (9th Cir. 1996) (Lucky called Holihan into two separate meetings to discuss his aberrational behavior. At one of these meetings, Lucky District Manager Church asked Holihan if he was having any "problems;" at the other, Church strongly encouraged Holihan to seek counseling through Lucky's EAP. Lucky also received several doctors' reports diagnosing Holihan with depression, anxiety and stress, including the reports of Drs. Strickler and Cramer. From these facts, a reasonable jury could infer that Lucky regarded Holihan as suffering from a disabling mental condition that substantially limited his ability to work"). Hudson argued at summary judgment that Auer stereotyped and discharge Plaintiff as being psychologically impaired, the end-product of Auer's admitted verbal abuse. For these reasons, the disability discrimination claim was not frivolous or groundless and the motion for fees should be denied.

**III.   DEFENDANT IS NOT ENTITLED TO FEES FOR THE ERISA CLAIM BECAUSE THE RECORD SUPPORTS AN INFERENCE OF AUER'S KNOWLEDGE OF THE PROTECTED ACTIVITY**

The District Court has discretion to award attorney's fees to either party in an ERISA suit. 29 U.S.C. § 1132(g)(1). Several factors guide ERISA fee determinations, including:

(1) the offending party's culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorney's fees; (3) the deterrent effect of an award of attorney's fees; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' positions.  Iron Workers Local # 272 v. Bowen, 624 F.2d 1255 (5th Cir. 1980) (noting that a court will seldom abuse its discretion by refusing to award attorneys' fees and costs to a defendant).

Under ERISA case law, "the "culpability" of a losing plaintiff significantly differs from that of a losing defendant. A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found "culpable", but may be only in error or unable to prove his case." Marquardt v. North American Car Corp., 652 F.2d 715, 721 (7th Cir. 1981). "This distinction also applies to the fifth factor the relative merits of the parties' positions since a plaintiff's culpability is determined by the lack of merit of his suit, while a defendant's culpability is determined by actions prior to suit." Id.

Plaintiff was not culpable in bringing suit and Defendant's fees should not be shifted to Hudson.  As to the ERISA claim, this Court concluded:

> Hudson cannot satisfy the third element. The best that he can do is offer his *assumption* that Rosenblum informed Auer of Hudson's request for information regarding long term benefits. While an unsupported assumption is clearly insufficient to withstand a motion for summary judgment, Hudson's position is further weakened by evidence offered by ICN showing that Rosenblum did not inform anyone about Hudson's request, and that Auer was not aware of that request prior to Hudson's termination.

Hudson v. Int'l Computer Negotiations, Inc., 2005 U.S. Dist. LEXIS 30022 (M.D. Fla. 2005) (emphasis added).

"A proper inference the jury can make from disbelieved testimony is that the **opposite** of the testimony is true." United States v. Mejia, 82 F.3d 1032, 1038 (11th Cir. 1996) (bolding added). The demeanor of a witness "may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, **there is no alternative but to assume** the truth of what he denies." NLRB v. Walton Mfg. Co., 369 U.S. 404, 408 (1962) (bolding added; quoting, Dyer v. MacDougall, 201 F.2d 265, 269 (2nd Cir. 1952)). Judgment as a matter of law is usually improper "when resolution of the dispositive issue requires a determination of state of mind." Croley v. Matson Navigation Co., 434 F.2d 73, 77 (5th Cir. 1970). Motive and intent are "fact-intensive issues [and] should be decided by a jury, which is in the position to observe the demeanor of witnesses and make appropriate credibility determinations." SEC v. Adler, 137 F.3d 1325, 1342 (11th Cir. 1998).[1]

"Inferences from circumstantial facts may frequently amount to 'full proof' of a given theory, and may on occasion **even be strong enough to overcome the effect of direct testimony** to the contrary." Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994) (bolding added; quoting, Rutherford v. American Bank of Commerce, 565 F.2d 1162, 1164 (10th Cir. 1977) (construing Title VII)); see also The Wenona, 86 U.S. 41, 58 (1873).

---

[1]Where, as here, the only evidence offered in support of the employer's explanation for discharge is disputed oral testimony, a jury could disbelieve it. See Carter v. Duncan-Huggins, Ltd., 727 F.2d 1225, 1234 (D.C. Cir. 1984).

Knowledge on the part of Auer is arguable because of several factors: (1) Hudson was fired shortly after his conversations with Ms. Rosenblum and Wallace; (2) Wallace contradicts Ms. Rosenblum; (3) the reasons for discharge are pretextual; (4) Auer admitted he had expressed concerns about Hudson missing work based on doctor visits for depression; and (5) the purpose of the November 4 conversation was to make Rosenblum aware of Hudson's possible need for disability leave and benefits associated with such leave.

"A determination of what a particular person knew, appreciated or understood is peculiarly within the province of the jury." Wyly v. Burlington Industries, Inc., 452 F.2d 807, 809-10 (5th Cir. 1971).   An inference is "[a] process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted." Black's Law Dictionary 778 (6th ed. 1990). "An inference is not unreasonable simply because it is based in part on conjecture, for an inference by definition is at least partially conjectural." Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1326 (11th Cir. 1982) ("Unavoidably, in deciding how much the jury can speculate  . . .  the line of demarcation which we are required to walk is ephemeral"). "Inference is capable of bridging many gaps." Galloway v. United States, 319 U.S. 372, 386 (1943).

Wallace admits that he had a conversation with Hudson on November 5, 2002 about disability insurance (Wallace 83). Wallace admits that he "may" have learned about the issue from Ms. Rosenblum (Wallace 83).  Ms. Rosenblum states that she did not inform Wallace or Auer of her conversation with Hudson (R. 55-3, ¶ 6). Wallace admitted that Auer would want to know if a member of the ICN executive committee might be out on disability

leave (Wallace 85).

Wallace's "may have" admission is important.  In <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155 (11th Cir.1993), an employee sought to prove that she had been transferred by the mayor in retaliation for engaging in conduct protected under Title VII. The mayor denied at trial being aware of her protected activity, but was impeached by his deposition testimony stating that he "**may**" have discussed Goldsmith's complaints during their meeting.  <u>Id</u>. at 1163 & n. 12. Those facts were sufficient for a jury to find that the mayor was aware of the employee's protected activity.  The jury is "at liberty to disregard the testimony of a witness on the ground that he is an employee of the defendant in the [presence] of conflicting proof or of circumstances justifying countervailing inferences or suggesting doubt as to the truth of his statement" or where "the evidence be of such a nature as fairly to be open to challenge as suspicious or inherently improbable." <u>Chesapeake & O. Ry. Co. v. Martin</u>, 283 U.S. 209, 214 (1931).  Fees should not be shifted.

**IV.   <u>ANY ATTORNEY'S FEES AWARDED MUST BE LIMITED BASED ON THE HOLDING IN <i>QUINTANA V. JENNE</i></u>.**

In <u>Quintana v. Jenne</u>, 414 F.3d 1306 (11th Cir. 2005), the court indicated that fees may be assessed but appropriately limited when a frivolous claim is joined with a non-frivolous claim. Plaintiff alleged two claims both challenging his termination from employment. "In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, <u>making it difficult</u> to divide the hours expended on a claim-by-claim basis." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983) (emphasis added).

In order to recover fees for a frivolous claim, Defendant ICN must identify "attorney's

fees attributable exclusively" to the frivolous claim. <u>Quintana</u>, 414 F.3d at 1311. Here, ICN cannot do so, for neither claim is frivolous. Counsel must "maintain billing time records in a manner that will enable a reviewing court to <u>identify distinct claims</u>." <u>Id</u>. (emphasis added).  Without such records, no fees can be awarded where a frivolous claim is factually intertwined with a non-frivolous one.  <u>See</u> <u>Navarro v. General Nutrition Corp.</u>, 2004 U.S. Dist. LEXIS 24258 (N.D. Cal. 2004) (Despite the conclusion that, absent any evidentiary support, the claim was frivolous, GNC should not be awarded attorney's fees under FEHA. GNC has not shown how much attorney time, if any, was spent defending the race claim. It appears the claim was never pursued by Ms. Navarro. GNC cannot take a mathematical approach based on the number of claims since that approach was explicitly rejected by *Hensley"*).  Accordingly, Defendant is not entitled to any fees unless the FCRA claim is frivolous and Plaintiff was culpable in bringing the ERISA claim.

## V.    HUDSON IS UNABLE TO PAY ICN'S ATTORNEY'S FEES

Although not relevant as to entitlement, Hudson further requests that Defendant be denied fees based on his inability to pay based on his negative net worth as of January 3, 2006, a copy of which was filed in January 2006 in response to the original motion for fees filed by ICN.

WHEREFORE, Defendant's Motion for Attorney's Fees should be denied.

Respectfully submitted,

/s/ Craig L. Berman
Craig L. Berman, Esq.
BERMAN LAW FIRM, P.A.
111 Second Avenue, N.E., Suite 706
St. Petersburg, FL 33701

Phone: (727) 550-8989
Fax: (727) 894-6251
Fla. Bar No. 068977

**ATTORNEY FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on June 28, 2006, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to: G. Steven Fender.

<u>/s/ Craig L. Berman</u>
Attorney